# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **ELISSA O'BRIEN,** *individually, and on behalf of all others similarly situated*, | ) ) ) |
| Plaintiffs, | ) NO. 3:18-cv-00024 ) |
| v. | ) JUDGE CAMPBELL ) MAGISTRATE JUDGE FRENSLEY |
| **CHRISTIAN FAITH PUBLISHING,** | ) ) |
| Defendant. | ) ) |

## MEMORANDUM AND ORDER

Pending before the Court is Plaintiff's Motion for Expedited Approval of 29 U.S.C. § 216(b) Court-Supervised Notice and Consent Forms and to Order Disclosure of Current and Former Employees (Conditional Certification). (Doc. No. 56). Through the motion, Plaintiff seeks an order (1) conditionally certifying a class of plaintiffs who worked as literary agents for Defendant Christian Faith Publishing; (2) directing Defendant to provide a list of last-known names, addresses, email address, and telephone numbers for all putative class members; and (3) equitably tolling the statute of limitations for prospective class members during the opt-in period. Defendant Christian Faith Publishing filed a response in opposition (Doc. No. 59), and Plaintiff filed a reply (Doc. No 60). For the reasons discussed below, Plaintiff's motion is GRANTED in part, and DENIED in part.

## I. FACTUAL BACKGROUND

Plaintiff filed this action as a purported collective action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). Plaintiff claims that she and other similarly situated employees worked remotely for Defendant Christian Faith Publishing as literary agents selling

publishing services for Defendant. Plaintiff claims that she and other literary agents were improperly classified as "independent contractors," regularly worked more than forty (40) hours per week, and at times were paid nothing, in violation of the minimum wage and overtime pay requirements of the Fair Labor Standards Act ("FLSA"). In support of the motion for conditional certification, Plaintiff submitted declarations from herself and another literary agent, Vincent Damiano, and supporting documents. (Doc. Nos. 57-1, 57-2, 57-3, 57-4, 57-5).

## II. STANDARD FOR CONDITIONAL CERTIFICATION

The FLSA provides that a collective action may be maintained against any employer by one or more employees for and on behalf of themselves and other employees similarly situated. 29 U.S.C. § 216(b). The FLSA does not define the term "similarly situated," but courts have held that plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs. *Bradford v. Logan's Roadhouse, Inc*., 137 F. Supp. 3d 1064, 1071 (M. D. Tenn. 2015); *Watson v. Advanced Distribution Servs*., LLC, 298 F.R.D. 558, 561 (M.D. Tenn. 2014). Employees may also be similarly situated if their claims are merely "unified by common theories of the defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Amos v. Lincoln Property Co*., 2017 WL 2935834 at * 2 (M.D. Tenn. July 7, 2017).

Generally, courts recognize a two-step process to determine whether plaintiffs are similarly situated. *Bradford*, 137 F. Supp. 3d at 1071. The first step takes place at the beginning of discovery, where the plaintiff bears the burden of showing that employees in the purported class are similarly situated. *Id*. The plaintiff must show only that her position is similar, not identical,

2

to the positions held by the putative class members. *Id*. (citing *Comer v. Wal-Mart Stores, Inc*., 454 F.3d 544, 546 (6th Cir. 2006)). At this first stage, courts use a "fairly lenient standard" that typically results in conditional certification of a representative class. *Id*. Because the statute only requires that employees be "similarly situated," plaintiffs seeking to certify a collective action under the FLSA face a lower burden than those seeking to certify a class action under Federal Rule of Civil Procedure 23. *Potts v. Nashville Limo & Transport, LLC*, 2015 WL 4198793 at * 4 (M.D. Tenn. July 10, 2015).

At the first stage, the plaintiff must present substantial allegations supported by declarations; once the plaintiff has met that burden, a court, in its discretion, may conditionally certify the case as a collective action, regardless of what exemptions the defendant wishes to assert at a later time. *Medley v. Southern Health Partners, Inc*., 2017 WL 3485641 at * 5 (M.D. Tenn. Aug. 15, 2017). If a court approves conditional certification, it may authorize the notification of similarly-situated employees to allow them to opt into the lawsuit. *Comer*, 454 F.3d at 546; *Bradford*, 137 F. Supp. 3d at 1072. The certification at this stage is conditional and by no means final. *Bradford*, 137 F. Supp. 3d at 1072. A court does not resolve factual disputes, decide substantive issues going to the merits, or make credibility determinations to determine whether a plaintiff has met his evidentiary burden at this first stage. *Id.*

### III. ANALYSIS

**A. Conditional Certification**

Plaintiff alleges that she and other literary agents employed by the Defendant were improperly classified as "independent contractors" and that they frequently worked more than 40 hours per week. Plaintiff states literary agents were compensated based on the number of books

they sold and were subject to "charge backs" if the customer did not fulfill his payment obligations. In some weeks, she claims, this resulted in literary agents not receiving minimum wage or overtime pay for hours worked in excess of 40 hours per week. Plaintiff submitted declarations from herself and Vincent Damiano and supporting documents. (Doc. Nos. 57-1, 57-2, 57-3, 57-4, 57-5).

Plaintiff stated she worked for Defendant making phone calls to potential customers from 9:00 a.m. until 5:00 p.m., "often working weekends to make up calls." (O'Brien Decl., Doc. No. 57-1). Mr. Damiano stated that he "regularly worked over 40 hours each workweek, often working weekends to make all my calls or send out my emails." (Damiano Decl., Doc. No. 57-2). Mr. Damiano said his hours were 9:00 or 10:00 a.m. to 7:00 p.m. (*Id.*) Ms. O'Brien and Mr. Damiano were paid $500 per sale, but were subject to "charge backs" if the customer did not complete their monthly payments. (Doc. Nos. 57-1, 57-2, 57-3). As a result of charge backs, Ms. O'Brien stated she sometimes received $0 for a week of work. (Doc. No. 57-1). Though they worked remotely and were classified as independent contractors, Ms. O'Brien and Mr. Damiano stated that they had set working hours and that their work was directed by Defendant who told them who to call, when to call, and what to say. (Doc. Nos. 57-1, 57-2).

Ms. O'Brien and Mr. Damiano both stated that they had spoken with other literary agents and based on these conversations believe that their job duties and compensation structure were the same as other literary agents and that other agents also regularly worked over 40 hours per week. Plaintiff alleges they all used the same script, were subject to the same compensation structure, and were subject to the same policies and oversight and control. Plaintiff attached the script and documentation of the compensation structure to her declaration. (Doc. Nos. 57-4, 57-5). Ms.

4

O'Brien and Mr. Daminao stated their supervisor regularly communicated with all of the agents simultaneously via group email messages. She submitted a copy of four group emails from their supervisor Steve Kay with a monthly sales report and instructions for making calls, following up on leads, and references to a common compensation structure. (Doc. No. 57-5). The emails encouraging agents to "keep your phones on as early as possible – and on for as long as possible," support the inference that other agents also worked more than 40 hours a week. (*See Id*. at 5). Plaintiff argues that this evidence, presented at the notice stage of the proceedings, is sufficient for this Court to conditionally certify the class.

Defendant argues Plaintiff has failed to show the literary agents are similarly situated and, therefore, does not meet the standard for conditional certification. In addition, Defendant criticizes the declarations as both too "cookie cutter" and too "highly individualized" to support a finding that the literary agents are similarly situated. (*See* Def. Br., Doc. No. 59 at 7 (referring to "conclusory assertions in the two cookie-cutter declarations" and complaining that the "declarations are highly individualized to the declarant's own experience")).

Defendant cites two cases in which the plaintiff did not provide sufficient evidence to show that the potential class members were similarly situated. In both cases, the plaintiff did not provide evidence based on personal knowledge that other potential plaintiffs were similarly situated. *See Steffen*, 2018 WL 1755332 at * 4 (plaintiff presented only his own affidavit which showed no basis for his knowledge of other employees); *Flexter v. Action Temp. Svcs., Inc*, No. 2:15-cv-754, 2016 WL 7852351 at * 4-5 (S.D. Ohio Mar. 25, 2016) (plaintiff's statements relate to the compensation of other employees were not based on personal knowledge and required further evidentiary support). Here, Plaintiff's declaration gives ample basis for her belief that

5

other employees were subject to the same employment conditions and pay structure. She has offered her own statement, which she says is based on speaking with other literary agents, the affidavit of one other literary agent, training and compensation documents from the company, and a series of emails supporting the inference that the potential class members are similarly situated.

Defendant's objection that the specific details of each employee's hours and pay are "highly individualized" does not foreclose the conditional certification of the class. Conditional certification does not require that the potential class members be identically situated. Indeed, at this pre-discovery notice stage, plaintiff is only required make a modest factual showing of being similarly situated to other putative class members. *See White v. MPW Indus. Servs., Inc*., 236 F.R.D. 363, 373 (E.D. Tenn. 2006) ("'[D]isparate factual and employment settings of the individual plaintiffs should be considered at the second stage of analysis.") (internal quotations omitted); *Steffen v. Contract Sweepers & Equip. Co*., No. 2:17-cv-579, 2018 WL 1755332 at * 2 (S.D. Ohio, Apr. 12, 2018) ("A plaintiff need only show that 'his position is similar, not identical, to the positions held by putative class members.'") (quoting *Comer,* 454 F.3d at 546-47); *Amos*, 2017 WL 2935834 at * 2 (proof is inevitably "individualized and distinct"). In fact, Defendant cites a case where the court conditionally certified a class under similar circumstances. (*See* Def. Br. at 4 (citing *Killion v. KeHE Dist* No. 3:12-cv-470, 2012 WL 5385190 at * 5 (N.D. Ohio Oct. 31, 2012)). In *Killion*, the court required plaintiff to allege more than that employer misclassified all of the employees in the same manner and make "at least a modest factual showing of being similarly situated." *Id*. The court found she had done by providing evidence that the potential plaintiffs held the same job title, worked for the same defendant, and performed similar job duties. *Id*. at * 5-8.

At this stage in the proceeding, Plaintiff's factual showing is sufficient proof that she is similarly situated to other putative class members, and the Court finds Plaintiff has met the fairly lenient standard governing conditional certification.

## B. Notification Procedure

Plaintiff asks the Court to direct Defendant to provide a list of last-known names, email addresses, mailing addresses, and telephone numbers for all putative class members who performed duties for Defendant within the last three years. In addition, Plaintiff requests Defendant include the notice with the paystubs of current agents. Defendant argues notice should be sent only by first-class mail and not by email or with paystubs and that it should, therefore, only be required to provide names and mailing addresses.

"[C]ourts within the Sixth Circuit have routinely approved dual notification through regular mail and email." *See Evans v. Caregivers, Inc.*, No. 3:17-cv-0402, 2017 U.S. Dist. LEXIS 76599 at * 7 (M.D. Tenn. May 19, 2017). Particularly here, where the putative class members worked remotely from their computers, the use of email as a method of sending notice is reasonable. Plaintiff has not suggested that she will attempt to contact putative class members by means other than email and regular mail. Therefore, the Court finds the provision of telephone numbers unnecessary at this time.

Except for Defendant's objection that including notice in employees' paychecks is "extraordinary notice" that should be denied, neither party provided reasons for or against including notice with paystubs. The Court notes that notice is paystubs is a frequently used method of notice and hardly "extraordinary," but will leave that issue for determination by the parties when counsel meets and confers regarding the notice and consent protocol. If it is not

resolved, the parties may set out their positions at the objection phase outlined below.

Plaintiff requests a 90-day opt in period to allow time to deal with returned mail and get notices to the intended recipients. Defendant objects to a 90-day period, arguing that 45-days sufficient. Courts regularly set the opt-in period between 45 and 90 days and sometimes allow an even longer period. *See Id.* at * 17. Given that potential class members appear to be located in various places, the Court finds that a 90-day opt in period is not unreasonably long and will allow potential class members 90 days to submit notice of intent to join the class.

## C. Equitable Tolling of the Statute of Limitations

Plaintiff requests the Court equitably toll the statute of limitations as of the date this motion is granted so prospective class members' statute of limitations will not run while Consent Forms are being mailed to them. Defendant objects and argues Plaintiff has not established any of the factors necessary to show that equitable tolling is warranted.

In certain circumstances, the statute of limitations under the FLSA may be equitably tolled. *See, e.g.*, *Myers v. Copper Cellar Corp.*, No. 3:95–CV–541, 1996 WL 766505 at * 3 (E.D.Tenn. Sept. 27, 1996). However, the Court finds it premature to decide statute of limitations issues regarding plaintiffs and claims not yet before this Court. *See Bradford v. Logan's Roadhouse, Inc.*, 137 F. Supp. 3d 1064, 1081 (M.D. Tenn. 2015) (declining to consider "undeveloped statute of limitations issues" at the conditional certification stage).

Plaintiff also requests that the consent forms be deemed "filed" on the date they are postmarked. This issue should be addressed, and preferably resolved, by the parties during the meet-and-confer process regarding the notice and consent protocol. If it is not resolved, the parties may set out their positions at the objection phase outlined below.

## IV. CONCLUSION

For the reason stated, Plaintiff's motion is **GRANTED** in part, and **DENIED** in part. The Court conditionally certifies a class of plaintiffs who worked as literary agents for Defendant Christian Faith Publishing within the past three years. Within 15 days, Defendant shall provide Plaintiff a list of names, and last-known email and mailing addresses of potential class members. Within fifteen days of the entry of this Order, the parties shall confer and submit agreed notice and consent forms. If the parties cannot agree, the Plaintiff shall file her proposed forms, and Defendant may file its specific objections thereto, both by the same deadline. Plaintiff may respond Defendant's objections within five days.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE